# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TINA PARKER,

    *Plaintiff,*

vs.

NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security Administration,

    Defendant.

Case No. 16-2588-EFM

## MEMORANDUM AND ORDER

Plaintiff Tina Parker seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. Parker contends that the administrative law judge ("ALJ") erred in granting her benefits as of November 1, 2013, but not as of her alleged disability onset date, which was December 25, 2011. Specifically, Parker contends that the ALJ erred in determining that she could perform light work before November 1, 2013, in analyzing her treating physician's opinion, and in evaluating her subjective complaints. Having reviewed the record, and as described below, the Court finds that the ALJ's

---

[1] On Jan. 20, 2017, Nancy A. Berryhill, became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the Defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

decision is supported by substantial evidence in the record. Therefore, the Court affirms the decision of the Commissioner.

I. **Factual and Procedural Background**

On September 12, 2013, Parker filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 25, 2011. She alleged disability due to a combination of impairments including a history of bilateral hip arthritis with total hip replacements in May 2012, chronic obstructive pulmonary disease ("COPD"), depression, and anxiety. Parker was 51 years old as of her date last insured.

Before her alleged onset date, Parker worked at a children's residential center where she helped children with their daily chores, hygiene, and schooling. After her alleged onset date, Parker continued to work part-time. From May 2013 to January 2015, she worked at a thrift store. She initially worked 35 hours per week as a sorter. In October 2013 she changed positions and became a ticketer. In November 2013, she reduced her hours to 20 to 25 hours per week. Parker's part-time earnings did not reach the presumptive level for substantial gainful activity.

The agency denied Parker's application both initially and upon reconsideration. She subsequently requested a hearing before an ALJ. ALJ Timothy Stueve held an administrative hearing on April 15, 2015 via video conference. Parker appeared in Kansas City, Missouri, and was represented by counsel. During the hearing, she testified about her previous work, her medical conditions, and her daily living activities. The ALJ also heard testimony from a vocational expert who testified regarding work that Parker could perform based on her age, education, and work history.

On May 5, 2015, the ALJ issued his decision finding that Parker had not engaged in substantial gainful activity since the alleged onset date. The ALJ found that Parker suffered from the severe impairments of status post bilateral total hip arthroplasty, COPD, carpal tunnel syndrome, depression, anxiety, and atrial fibrillation status post pacemaker implantation. However, the ALJ found that Parker does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ assessed two RFCs for Parker, concluding that her conditions worsened as of November 1, 2013. For the period beginning on her alleged onset date to October 31, 2013, the ALJ determined that Parker had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following restrictions:

> She could occasionally lift 20 pounds and frequently lift or carry ten pounds; could sit for up to six hours and stand or walk for approximately six hours during an eight-hour workday with normal breaks; could occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds; could not reach overhead with the non-dominant, right upper extremity; was able to frequently but not constantly handle and finger bilaterally; was able to understand, carry out, and remember simple, routine, repetitive tasks involving only simple work-related decisions and few, if any workplace changes; could not interact with public; and could be around co-workers throughout the day, but with only brief, incidental interaction with co-workers and no tandem tasks.

For the time period beginning November 1, 2013, to the present, the ALJ determined Parker had the RFC to perform sedentary work as defined in 20 CFR § 404.1567(a), with the following restrictions:

> She can occasionally lift ten pounds; can sit for up to six hours and stand or walk for approximately two hours during an eight-hour workday with normal breaks; can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; cannot reach overhead with the non-dominant, right upper extremity; is able to frequently but not constantly handle and finger bilaterally; is able to understand, carry out, and

remember simple, routine, repetitive tasks involving only simple work-related decisions and few, if any, workplace changes; cannot interact with the public; and can be around co-workers throughout the day, but with only brief, incidental interaction with co-workers and no tandem tasks.

The ALJ then determined that Parker has been unable to perform any past relevant work since December 25, 2011. He further concluded that before November 1, 2013, considering Parker's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Parker could have performed. But, as of November 1, 2013, there were no jobs that existed in significant numbers in the national economy that Parker could perform. Thus, the ALJ concluded that Parker was not disabled before November 1, 2013, but became disabled on that date and continued to be disabled through the date of his decision.

Given that the ALJ issued a partially favorable decision, Parker sought reconsideration of the ALJ's decision from the Appeals Council. The Appeals Council denied review on July 9, 2016. Thus, the ALJ's May 2015 decision became the final decision of the Commissioner. On August 24, 2016, Parker filed a Complaint in this Court seeking reversal of the ALJ's decision and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration. Given Parker's exhaustion of all administrative remedies, her claim is now ripe for review before this Court.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[2] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial

---

[2] 42 U.S.C. § 405(g).

evidence in the record and whether the ALJ applied the correct legal standard.[3]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4]  The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6]  This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[7]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

---

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[9] *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[10] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[11]

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[12] The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work.[13] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[14]

---

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id*.

### III. Analysis

Parker contends that the ALJ's decision denying her benefits before November 1, 2013, should be reversed because the ALJ's RFC assessment is not supported by substantial evidence in the record. Specifically, Parker argues that the ALJ erred (1) in determining that she could perform light work; (2) by not properly analyzing the opinion of her treating physician, Dr. Punswick; and (3) by not properly evaluating her subjective complaints. The Court will address each of these arguments below.

**A.  RFC Determination**

An RFC is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from the claimant's impairments.[15] It does not represent the least a claimant can perform, but the most.[16] In this case, the ALJ determined that before November 1, 2013, Parker could perform light work except that she was limited to only occasional climbing of ramps and stairs and no climbing of ladders, ropes, or scaffolds. Parker contends that the ALJ erred in making this assessment because "light work" requires the ability to stand and/or walk for a total of six hours in an eight hour day, and the record shows that she has been unable to stand and/or walk for six hours since December 25, 2011.

Parker cites several medical records in support of her argument that she had difficulty walking and standing before November 1, 2013. For example, she points out that in November 2011, she presented to the emergency room with a six month history of worsening pain in her lower right extremity. In March 2012, Parker presented to a neurosurgery clinic with continued complaints of back and leg pain. The following week, she returned to the emergency room with

---

[15] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

[16] *Id.*

a two-day history of leg pain and walking difficulty. Parker also cites her physical therapy assessment from September 2012, which was five months after her bilateral hip replacement, that states that she continued to have ambulation deficits and decreased range of motion.

The ALJ, however, reviewed the record and cited several medical records supporting his determination that Parker could perform light work with some restrictions. First, the ALJ noted that despite Parker's leg pain in November 2011, she had no trouble walking and normal range of motion in her lower extremities. He also noted that with regard to Parker's March 2012 visit to the neurosurgery clinic, Parker's reported deficits were inconsistent with the magnetic resonance imaging scan results. And, the ALJ reported that Parker's physical examinations from November 2012, December 2012, and June 2013 were normal.

The ALJ also referred to other evidence in the record in finding that Parker could perform light work with some restrictions. He noted that Parker was employed just below the substantial gainful activity level from May 2013 to January 2013. For the vast majority of that time, she worked 35 hours per week as a sorter in a thrift store. The ALJ noted that Parker had to take additional breaks because she had "to rest and walk around to calm my nerves." But, this actually supports the ALJ's position because it shows that she needed the break more for mental health reasons rather than physical reasons. The ALJ also referred to the opinion of the State agency consultant, which stated that Parker could perform light work with some restrictions.

The ALJ's RFC assessment is supported by substantial evidence in the record. Although Parker may have cited some conflicting medical evidence in support of her argument, "the trier of fact has a duty to resolve that conflict."[17] The ALJ's finding is based on a reasonable

---

[17] *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from

interpretation of the evidence in the record. Therefore, the Court affirms the ALJ's finding that Parker could perform light work with some restrictions before November 1, 2013.

**B.     Treating Physician Opinion**

Parker next argues that the ALJ erred in evaluating a March 2015 opinion from her treating physician, Dr. Punswick.[18] To determine the exact weight to assign a treating source's opinion, the ALJ must follow a two-step inquiry.[19] At the first step, the ALJ must decide whether to afford the opinion controlling weight.[20] The ALJ will give controlling weight to a treating source opinion about the nature and severity of impairment only if the opinion is: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) consistent with other substantial evidence in claimant's case record.[21] An opinion that is deficient in either support or consistency with other evidence is not entitled to controlling weight.[22]

If the treating source opinion is not given controlling weight, the inquiry does not end.[23] A treating source opinion is still entitled to deference and must be evaluated according to the factors provided in 20 C.F.R. § 404.1527.[24] These factors include:

---

being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been de novo." (internal quotation marks omitted)); *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994) (stating that even if the court finds the evidence to be "equivocal," it must affirm the ALJ's decision if it was supported by substantial evidence and correct legal standards were used).

[18] Dr. Punswick provided other opinions, but Parker does not contest the ALJ's evaluation of them.

[19] *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

[20] *Id.*

[21] 20 C.F.R. § 404.1527(c).

[22] *Krauser*, 638 F.3d at 1330.

[23] *Id*.

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the [source's] opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the [source] is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[25]

Though the ALJ is not required to discuss all six of these regulatory factors,[26] the ALJ must "give good reasons, tied to the factors specified in the cited regulations . . . for the weight assigned" a treating source opinion.[27] This analysis must be "sufficiently specific to make clear to any subsequent reviewers the weight [the ALJ] gave to the treating source's medical opinion and the reason for that weight."[28] And if the ALJ rejects a treating source's opinion, "he must articulate specific, legitimate reasons for his decision."[29]

Dr. Punswick began treating Parker in February 2011. On March 3, 2015, he completed a Medical Source Statement in which he assessed Parker's capabilities. Dr. Punswick opined that Parker was limited to sitting and standing/walking less than two hours of an eight-hour workday and cannot walk even one block without rest or severe pain. He further opined that Parker would likely miss more than four days of work per month. According to Dr. Punswick, these physical restrictions began in November 2011.

---

[24] *Id*. at 1330-31.

[25] *Id.* at 1331; *see also* 20 C.F.R. § 404.1527(c)(1)–(6).

[26] *Oldham*, 509 F.3d at 1258.

[27] *Krauser*, 638 F.3d at 1330 (citation omitted).

[28] *Id.* at 1331 (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004)) (internal quotation marks omitted).

[29] *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (quotation omitted).

The ALJ gave Dr. Punswick's opinion little weight. Parker takes issue with this determination, arguing that the ALJ failed to give specific reasons for discrediting Dr. Punswick's opinion and that there is no other evidence in the record that contradicts it. The Court disagrees.

For a physician's statement to be given persuasive weight, it must be supported by evidence in the record.[30] Here, the ALJ found that the medical evidence does not support Dr. Punswick's opinion. Dr. Punswick based his opinion on Parker's hip pain, back pain, decreased range of motion, poor agility, and use of a walker. These findings, however, were missing from Dr. Punswick's own treatment notes. Indeed, Dr. Punswick's treatment notes from November and December 2012 and June, September, and October 2013 all state that Parker walked normally and had normal strength.[31]

Furthermore, the ALJ properly relied on other evidence from the record in discounting Dr. Punswick's opinion.[32] The ALJ noted that Dr. Punswick's opinion is inconsistent with Parker's part-time work history. Parker worked 35 hours per week from May 2013 to October 2013, which averages to seven hours per day, five days per week. She then reduced her hours to 20 to 25 hours per week, which averages four to five hours per day, five days per week. This is

---

[30] 20 C.F.R. § 404.1527(c).

[31] *See White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002) (finding that the difference between the treating physician's restrictive functional assessment and her examination was a factor in rejecting that opinion); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("[I]t is an error to give an opinion controlling weight simply because it is the opinion of the treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.").

[32] *See* 20 C.F.R. § 404.1527(c) (stating that a medical opinion that is more consistent with the record as a whole will be given more weight).

certainly at odds with Dr. Punswick's opinion that Parker could only work two hours per day and provides an additional basis by which the ALJ could discredit the opinion.[33]

Parker also claims that the ALJ erred in not utilizing the factors listed in 20 C.F.R. § 404.1527(c) to analyze Dr. Punswick's opinion. But this is not the case. The ALJ considered Dr. Punswick to be a treating source who had seen Parker for several years. The ALJ considered whether Dr. Punswick's opinion was supported by the medical evidence in the record and found that it was not. The ALJ also considered whether the opinion was consistent with the record as a whole. The remaining factors set forth in § 404.1527 are not applicable in this case. Dr. Punswick was not a specialist and there were no other factors brought to the ALJ's attention that would require him to evaluate the opinion differently. Accordingly, the Court finds the ALJ did not err in giving Dr. Punswick's opinion little weight.

## C. Credibility

In determining Parker's RFC, the ALJ assessed the credibility of her subjective complaints. The ALJ concluded that Parker's statements concerning the intensity, persistence, and limiting effect of her symptoms were not entirely credible. Parker argues that this conclusion is not supported by substantial evidence in the record.

An ALJ's credibility determination is generally treated as binding on review.[34] "Credibility determinations are peculiarly the province of the finder of fact" and will not be

---

[33] *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078-79 (10th Cir. 2007) (finding that the ALJ reasonably discounted a treating physician's opinion when it was inconsistent with the claimant's statements in a questionnaire).

[34] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990).

overturned when supported by substantial evidence.[35] The Court cannot displace the ALJ's choice between two fairly conflicting views even though the Court may have justifiably made a different choice.[36] However, notwithstanding the deference generally given to an ALJ's credibility determination, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[37]

In evaluating a disability claim based on nonexertional symptoms, including pain, the ALJ must first determine whether the objective medical evidence demonstrates that a claimant suffers from an underlying medically determinable physical or mental impairment.[38] If so, the ALJ must consider the relationship between the impairment and the alleged nonexertional limitation.[39] If a loose nexus exists, the ALJ must then consider all the evidence, both objective and subjective, in determining whether a claimant's limitation is disabling.[40] Factors that may be relevant in assessing the claimant's testimony include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence.[41]

---

[35] *Wilson*, 602 F.3d at 1144 (quoting *Diaz v. Sec. Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

[36] *Oldham*, 509 F.3d at 1257-58.

[37] *Wilson*, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998)).

[38] *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987).

[39] *Id.* at 164.

[40] *Id.*

[41] *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation marks and citation omitted).

A review of the ALJ's decision in this case reveals that the ALJ correctly assessed Parker's credibility. The ALJ based his decision on specific factors including the medical evidence in the record, Parker's part-time work, and her activities of daily living. Parker has not shown that the ALJ's assessment lacks substantial evidence in the record.

First, the ALJ found that Parker's subjective complaints were diminished by her work record. As discussed above, the record shows that Parker had substantial part-time employment from May 2013 through October 2013. Parker reported that she was provided more rest periods than other workers but that she was able to perform her work satisfactorily. Parker contends that her work record actually supports her credibility rather than detracts from it. However, the Court finds the ALJ's determination to be reasonable. Work, even part-time work, may show that a claimant is capable of more than what he or she claims.[42] And, in this case, Parker's statements that she cannot work are inconsistent with the record evidence.

The ALJ also observed that Parker's allegations were not supported by the medical evidence before November 1, 2013. As discussed above, although Parker developed avascular necrosis in her hips, the condition was sufficiently treated with bilateral replacement surgery in May 2012. Medical treatment notes from November and December 2012 and June, September, and October 2013 all state that Parker walked normally and had normal strength.

The ALJ also concluded that Parker's activities of daily living were not as restricted as one would conclude given her extreme allegations of pain. The ALJ noted that Parker was the primary caregiver for her special needs granddaughter in 2011 and 2012. Parker also reported that she cooked with her daughter's help, cleaned her house, made household repairs, mowed the

---

[42] 20 C.F.R. § 404.1571; *see also Sheperd v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. 1999) (finding evidence that a claimant did mechanic work even after the alleged onset of disability supported a finding of nondisability).

lawn, and shoveled snow, all with some difficulty. Plaintiff claims that the ALJ ignored the fact that her daughter helped her with some of her daily activities, but the ALJ considered this in his decision. He expressly noted that she "reported receiving daily help to perform virtually all of her activities of daily living." Thus, the ALJ reasonably considered Parker's daily living activities in finding that her complaints were not fully credible.

Parker's final argument regarding the ALJ's assessment of her credibility is that he did not consider her attempts to obtain pain relief. She suggests that she sought treatment for her ongoing pain by undergoing surgery, injections, physical therapy, and taking medications. According to Parker, her treating physicians never questioned the legitimacy of her complaints.

The Court notes that the ALJ did not explicitly consider the extensiveness of her attempts to obtain pain relief in his credibility analysis. However, the ALJ did note the course of her treatment and weighed the opinion evidence in his decision. Regardless of whether the ALJ sufficiently considered this factor, the Court will not overturn his credibility determination on appeal.[43] The Court has reviewed the record and finds that substantial evidence supports the ALJ's credibility finding.

## IV. Conclusion

The ALJ's RFC assessment that Parker could perform light work with some additional restrictions is supported by substantial evidence in the record. In addition, the ALJ properly evaluated the opinion of Parker's treating physician and her subjective complaints. Therefore, the Court affirms the decision of the Commissioner.

---

[43] *See Pickup v. Colvin*, 606 F. App'x 430, 433-34 (10th Cir. 2015) (affirming the ALJ's credibility analysis even though it found two of the reasons given by the ALJ were not supported by the record); *Tegtmeyer v. Berryhill*, 2017 WL 411350, at *3 (D. Kan. 2017) (stating that the Court's review is deferential and credibility determinations are generally binding).

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED.**

**IT IS SO ORDERED**.

Dated this 31st day of July, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE